ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2007 AUG 31 P 12: 05
CLERK

| | | |
|---|---|---|
| JAMES GLENN WILDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 107-041 |
| | ) | |
| GERALD LAWSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Hays State Prison located in Trion, Georgia, filed the above-captioned case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). Because Plaintiff's complaint was filed IFP, it must be screened to protect potential Defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by pro se litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) *(per curiam)*, but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.[1]

---

[1] Under 28 U.S.C. § 1915(b)(4), a prisoner cannot be prohibited from bringing a civil action because he has no means by which to pay the initial fee; thus, the Court will proceed to screen Plaintiff's complaint even though he is unable to pay any initial partial filing fee. However, in accordance with the terms of the Consent to Collection of Fees form which Plaintiff signed, he remains liable for the full filing fee.

## I. BACKGROUND

*Liberally* construing Plaintiff's complaint, the Court finds the following. Plaintiff names the following Defendants: (1) Gerald Lawson, Sheriff, Lincoln County; (2) Jack Hancock, Chief Investigator, Lincoln County Sheriff's Department; (3) Marcy Remsen, Chief Deputy Sheriff, Lincoln County Sheriff's Department; (4) Carol Burgess, Chief Jailer, Lincoln County Sheriff's Department and Detention Center; (5) Ruby Pratt, Assistant Chief Jailer, Lincoln County Sheriff's Department and Detention Center; (6) Tanika Cullars, Jailer and Housing Deputy, Lincoln County Detention Center; and (7) Leighton Taylor, Former Assistant Chief Jailer, Lincoln County Sheriff's Department. (Doc. no. 1, pp. 4-8). Plaintiff alleges that, during three separate periods of incarceration at the Lincoln County Jail ("LCJ"), Defendants violated his constitutional rights. (Id. at 9-18).

First, Plaintiff alleges that in April 2005 he was denied access to an attorney and legal materials. (Id. at 9). According to Plaintiff, Defendant Burgess refused to respond to his requests for access to legal materials, and Defendant Taylor advised him to direct his requests to the Clerk of Superior Court, who informed him that Defendant Lawson was responsible for providing him with access to legal materials. (Id.). After the Clerk of Superior Court redirected Plaintiff's requests for access to legal materials back to the Sheriff's Department, Plaintiff contends that his requests were again denied by Defendants Lawson, Burgess, and Taylor. (Id.). Plaintiff asserts that he wrote several grievances, which were ignored by Defendant Burgess in violation of grievance procedures. (Id. at 10).

2

Moreover, Plaintiff alleges that he was not contacted by an attorney for the first eight (8) months of his incarceration and that he was incarcerated without bail for seven (7) months. (Id. at 10-11).

Next, Plaintiff alleges that in April 2005 he requested that Defendants Lawson, Remsen, and Hancock arrest Jeremiah Smith for the theft of Plaintiff's automobile parts. (Id.). According to Plaintiff, Defendant Hancock stated that he would contact Mr. Smith, if Plaintiff provided him with information concerning drug activity. (Id. at 11-12). Plaintiff contends that Defendant Hancock later expressed reluctance to pursue criminal charges against Mr. Smith because Plaintiff's incarceration made him a poor witness. (Id. at 12). Plaintiff claims that Defendant Remsen subsequently informed him that Mr. Smith acknowledged taking Plaintiff's property and that Defendant Lawson agreed to prosecute Mr. Smith. (Id.). However, Plaintiff contends that Defendants Lawson and Hancock later refused to prosecute Mr. Smith, citing probable cause concerns. (Id. at 13). Thereafter, Plaintiff submits that he filed affidavits with the Lincoln County Magistrate, who determined sufficient probable cause existed to issue an arrest warrant for Mr. Smith. (Id. at 14).

Finally, Plaintiff alleges that, when he was transferred to the LCJ in September 2006, Defendant Burgess placed him in isolation. (Id. at 14-15). After three (3) days, Plaintiff contends that he asked Defendant Burgess to explain his isolation, but Defendant Burgess refused to put anything in writing, denied that Plaintiff lost privileges, and stated that he would remain in isolation until further notice. (Id. at 15). Plaintiff maintains that, while in isolation, he was denied access to telephones, newspapers, televisions, and legal materials. (Id.). Furthermore, Plaintiff submits that he was sporadically denied access to showers while

3

in isolation. (Id.). According to Plaintiff, Defendants Pratt, Burgess, and Cullars denied his requests to contact his attorney, who left two (2) phone messages that were not communicated to him. (Id. at 15-16). After two (2) weeks in isolation, Plaintiff contends that Defendant Lawson agreed to move him into "C-Block," when a cell became available. (Id. at 15-16). During the following two weeks, Plaintiff alleges that Defendants Pratt and Cullars disregarded Defendant Lawson's order, moving african-american inmates into "C-Block" ahead of him, a person of caucasian descent. (Id. at 16). Plaintiff concludes that his constitutional rights were violated because Defendants Lawson and Burgess have personal issues with him. (Id. at 17).

As relief, Plaintiff requests that the Court issue a declaratory judgement stating that Defendants violated his constitutional rights. (Id. at 20). Plaintiff seeks $500,000 in compensatory damages from Defendants, jointly and severally, for emotional and psychological damages, mental anguish, personal humiliation, injury to Plaintiff's quality of life, and loss of property and time. (Id. at 21). Additionally, Plaintiff asks for $350 in compensatory damages from Defendants, jointly, for court costs. Furthermore, Plaintiff seeks $75,000 in punitive damages from each Defendant. (Id.). Plaintiff is suing all Defendants in their official and individual capacities. (Id. at 4-8).

## II. SCREENING OF COMPLAINT

### A.   LCJ Procedures and Grievance Claims

Plaintiff alleges that the violation of grievance procedures set forth in the Lincoln County Detention Center's Inmate Handbook ("Handbook"), and in particular, the mishandling of his grievance filings, violated his constitutional rights. "Procedural

4

requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. at 1467. Addressing that plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of that plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of that plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding that plaintiff's grievance claim. Id.

5

In this case, Plaintiff submits that his constitutional rights were violated because Defendant Burgess, by ignoring several grievances filed by Plaintiff, violated provisions contained in the Handbook. (Doc. no. 1, p. 10). However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Furthermore, mere violations of *procedures* contained in the Handbook do not implicate Plaintiff's federal constitutional rights. See Wildberger, 869 F.2d at 1467-68; Rienholtz, 64 F. Supp.2d at 731. Therefore, Plaintiff's claims pertaining to alleged violations of the LCJ grievance procedures in the Handbook fail as a matter of law.

**B.     Access to the Courts Claim**

Plaintiff contends that he was denied access to the courts because he was denied access to an adequate law library and denied access to an attorney. The First Amendment safeguards the right "to petition the Government for a redress of grievances." (U.S. Const. amend. I). To that end, the Supreme Court has held that inmates must be provided "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Lewis v. Casey, 518 U.S. 343, 351 (1996) (quoting Bounds v. Smith, 430 U.S. 817, 825 (1977)). Thus, prisoners are entitled to legal research materials or assistance from persons trained in the law. Bounds, 430 U.S. at 828. However, to state a viable access-to-the-courts claim, a plaintiff must plead and prove actual injury to existing or contemplated litigation of non-frivolous (and therefore viable) claims challenging the

plaintiff's sentence or conditions of confinement. See Lewis, 518 U.S. at 349-55. The Eleventh Circuit has clarified the requirements for pursuing a lack-of-access-to-the-courts claim:

> [A] plaintiff first must show actual injury before seeking relief . . . . This essential standing requirement means that prison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action. To prevail, a plaintiff must provide evidence of [] deterrence, such as denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from action of prison officials.

Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (citations omitted).

In this case, Plaintiff does not allege that the actions of any particular Defendant actually "hindered his 'efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic constitutional rights.'" Id. 1291 (quoting Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (*per curiam*)). Rather, Plaintiff merely submits that, during his 2005 incarceration at the LCJ, he was neither afforded access to legal materials nor contacted by an attorney for eight (8) months. (Doc. no. 1, pp. 9 & 11). Additionally, Plaintiff asserts that, during his 2006 incarceration at the LCJ, Defendants Pratt, Burgess, and Cullars denied his requests to contact an attorney, who left two (2) phone messages that were not communicated to Plaintiff. (Id. at 16-17). "[I]n an access-to-courts claim, 'a plaintiff cannot merely allege a denial of access to a law library or adequate attorney, even if the denial is systemic.'" Wilson, 163 F.3d at 1291 (quoting Sabers, 100 F.3d at 84). Although Plaintiff contends that the conditions of his 2006 incarceration hindered his ability to work on a case pending in Lincoln County, the Court finds Plaintiff's general and conclusory allegations insufficient to sustain a denial-of-access

7

claim because he does not allege any specific injury, such as a denial or dismissal of a direct appeal or habeas petition. (Doc. no. 1, p. 15). Accordingly, Plaintiff has failed to state a viable access to the court claim.

### C. Pre-trial Due Process Claims

Although the factual basis of this claim is not entirely clear, to the extent Plaintiff may be claiming that any particular Defendant should be held liable for denying him bond, such an allegation is without merit. Plaintiff merely states that, after his April 2005 incarceration at the LCJ, he was "held with no bail for seven months, but was not indicted on said charges until thirteen months after arrest." (Doc. no. 1, pp. 9-10). However, none of the Defendants were ultimately responsible for setting Plaintiff's bond, and thus, it is difficult to ascertain how Plaintiff's denial of bond would give rise to a claim against any of the Defendants. See O.C.G.A. § 17-6-1 (describing before whom offenses are bailable). Nevertheless, "any rights Plaintiff had regarding bond would be founded on Georgia statutory law." Datz v. Hutson, 806 F. Supp. 982, 988 (N.D. Ga. Sept. 24, 1992) (holding that inmate failed to allege violation of federal right to rescind bond in connection with state criminal prosecution). Here, Plaintiff was detained for a state criminal violation, and thus, any rights he had regarding bond would be founded on state law. As such, to the extent that Plaintiff blames any particular Defendant for the denial of his right to bond, such an allegation fails to state a viable claim under 42 U.S.C. § 1983.

Alternatively, to the extent that Plaintiff may be claiming that any particular Defendant should be held liable for detaining him for thirteen months prior to his indictment, such an allegation is also without merit. Normally, pre-trial rights are properly evaluated

8

under the due process clause of the Fourteenth Amendment. See Lancaster v. Monroe County, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); Card v. Miami-Dade County Fla., 147 F. Supp.2d 1334, 1340 (S.D. Fla. 2001). However, warrantless detention is governed by the Fourth Amendment, which requires a prompt, judicial determination of probable cause as a prerequisite to an extended pre-trial detention following arrest.[2] Gerstein v. Pugh, 420 U.S. 103, 114 (1975). Furthermore, this probable cause determination should be made with 48 hours of an arrest to withstand constitutional scrutiny. County of Riverside v. McLaughlin, 500 U.S. 44, 56-57 (1991). Longer delays presumptively violate the Fourth Amendment. Powell v. Nevada, 511 U.S. 79, 83-84 (1994).

In this case, Plaintiff merely complains that he was incarcerated for thirteen months before he was indicted. (Doc. no. 1, p. 10). However, Plaintiff fails to allege whether a probable cause determination or a warrant was acquired within 48 hours of his arrest. Indeed, it is possible that, outside the presence of Plaintiff, a judicial officer made a finding

---

[2]The Supreme Court has left it to the individual states to determine the process by which probable cause hearings are to be integrated into the various states' pre-trial procedures. Gerstein v. Pugh, 420 U.S. 103, 123-25 (1975). Georgia, under O.C.G.A. § 17-4-1, et seq., has adopted a statutory scheme governing pre-trial detention and release. Pursuant to O.C.G.A. § 17-4-62, arresting officers must take arrestees before a judicial officer for a probable cause determination within 48 hours of arrest. However, arresting officers may satisfy this requirement, even without an adversarial hearing, by obtaining an arrest warrant from a neutral magistrate within 48 hours of a warrantless arrest. Dean v. State, 295 S.E.2d 306, 310 (Ga. 1982).

of probable cause within 48 hours of Plaintiff's arrest through an affidavit.[3] As such, Plaintiff fails to plead facts sufficient to establish a claim for a violation of his pre-trial due process rights.

**D.      Failure to Prosecute Claim**

Plaintiff submits that the failure of Defendants Lawson, Remsen, and Hancock to prosecute Mr. Smith for the alleged theft of his property violated his constitutional right to equal protection. Article III of the Constitution limits federal courts to adjudicate only "cases" and "controversies." (U.S. Const. art. III. § 2, cl. 1); see also Allen v. Wright, 468 U.S. 737, 750 (1984). Consequently, litigants must have "standing" to invoke the power of a federal court. Malowney v. Federal Collection Deposit Group, 193 F.3d 1342, 1346 (11th Cir. 1999). "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975). Standing is established, if the following three requirements are met: (1) the plaintiff has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Pittman v. Cole, 267 F.3d 1269, 1282 (11th Cir. 2001) (citing White's Place, Inc. v. Glover, 222 F.3d 1327, 1329 (11th Cir. 2000)).

---

[3]The Supreme Court has clearly determined that the post-arrest determination of probable cause affords an arrestee no greater procedural requirements than that which are required for issuing an arrest warrant. Gerstein, 420 U.S. at 119-22; see also McLaughlin v. County of Riverside, 888 F.2d 1276, 1279 (9th Cir. 1989) (holding that it is not constitutionally mandated that an arrestee be present at a Gerstein post-arrest probable cause determination), *vacated & remanded on other grounds*, 500 U.S. 44 (1991).

10

In this case, Plaintiff complains that Defendants Lawson, Remsen, and Hancock refused to prosecute Mr. Smith for the theft of Plaintiff's automobile parts. However, to the extent that Plaintiff complains that Mr. Smith, or anyone else for that matter, has committed a crime, such an allegation alone does not give rise to a private right of action. Plaintiff has failed to allege any injuries as a result of these Defendants' failure to arrest Mr. Smith. Rather, Plaintiff only conveys an annoyance with these Defendants' refusal to act in accordance with Plaintiff's wish to have Mr. Smith arrested. Moreover, Plaintiff submits that he filed affidavits with the Lincoln County Magistrate, who ultimately issued a warrant for Mr. Smith's arrest. Thus, Plaintiff has no standing, and this complaint has not presented a case or controversy over which this Court may issue a decision. Cf. Linda R.S. v. Richard D., 410 U.S. 614, 618 (1973) ("[A] citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution."). Simply put, to the extent that Plaintiff complains that Defendants Lawson, Remsen, and Hancock refused to prosecute Mr. Smith, he lacks standing to raise such a claim, and therefore, his claim must fail as a matter of law.

E.  **Conditions of Confinement Claim**

Plaintiff maintains that when he was placed in isolation for thirty-two (32) days during his 2006 incarceration at the LCJ, he was subjected to unconstitutional conditions of confinement. A stay in administrative segregation only infringes upon a protected liberty interest, if it is poses an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995) (holding that a prisoner's 30-day stay in disciplinary confinement did not violate Due Process). To be more

11

precise, to establish a constitutional violation, Plaintiff must bring allegations showing either that a "change in [his] conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court" or that "the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit imposes an atypical and significant hardship on [Plaintiff] in relation to the ordinary incidents of prison life." Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999) (citation and quotation omitted).

In this case, Plaintiff alleges that, upon transfer to the LCJ in September 2006, he was placed in isolation for thirty-two (32) days, denied privileges, and sporadically denied access to showers. Rather than suggesting that the isolation resulted in a sentence exceeding that imposed by the court of conviction, Plaintiff submits that the isolation resulted in the denial certain privileges. Assuming Plaintiff's 32-day stay in isolation resulted in the denial of benefits consistently given to prisoners, the Court is not persuaded that Plaintiff's isolation posed any significant and atypical hardship.[4] Admittedly, the prolonged denial of access to showers or exposure to unsanitary prison conditions would constitute a serious claim, but here, Plaintiff avers only that he was sporadically denied access to showers during his isolation. As such, Plaintiff's claim does not amount to a violation of constitutional

---

[4]Of course, a much longer stay in isolation could pose an "atypical hardship," and thus, trigger minimum procedural due process protections. See Williams v. Fountain, 77 F.3d 372, 374 (11th Cir. 1996) (explaining that a full year of solitary confinement constituted a liberty deprivation, and thus, triggered procedural due process protections under Sandin); but see Wagner v. Hanks, 128 F.3d 1173, 1175-76 (7th Cir. 1997) (Posner, J.) ("[T]he rite to litigate disciplinary confinements have become vanishingly small . . . when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after Sandin it can be made the basis of a suit complaining about a deprivation of liberty.").

12

magnitude. Cf. Fischer v. Ellegood, No. 06-15167, 2007 WL 1624315, at *4 (11th Cir. June 6, 2007) (*per curiam*) (holding that denial of access to showers for a five day period does not amount to a deprivation of essential sanitation or an Eighth Amendment violation). Therefore, Plaintiff's isolation allegations fail to state a viable claim.

### F. *Respondeat Superior* Claims

To the extent Plaintiff blames Defendant Lawson for the actions the other Defendants, such an allegation also fails to state a claim upon which relief can be granted. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor/employer actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor/employer and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). When describing the events forming the basis of Plaintiff's only arguably viable claim for the alleged violation of his equal protection rights, Plaintiff has not alleged that Defendant Lawson participated in the alleged violation. In fact, Plaintiff submits that Defendants Pratt and Cullars deliberately disregarded Defendant Lawson's order to move Plaintiff into "C-Block." Furthermore, Plaintiff has proffered no reason to suppose that Defendant Lawson knew that Defendants Pratt and Cullars were violating his order or otherwise improperly segregating inmates at the LCJ.

13

Similarly, Plaintiff fails to allege a "causal connection" between Defendant Lawson and the asserted equal protection violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[5] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Here, although Plaintiff believes that his constitutional rights were violated because Defendant Lawson has personal issues with him, Plaintiff has proffered no allegations to suggest that Defendant Lawson knew about any widespread abuse or was responsible for a custom or policy which resulted in a violation of Plaintiff's equal protection rights. In sum, Plaintiff has failed to state a claim against Defendant Lawson based on his supervisory position as Sheriff.

---

[5]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

G.  **Official Capacity Claims**

Plaintiff has also attempted to sue all Defendants in their respective official and individual capacities for monetary damages. In Georgia, sheriffs operate as arms of the state when performing functions which flow from the state. Purcell v. Toombs County, Ga., 400 F.3d 1313, 1325 (11th Cir. 2005). Similarly, sheriff's department personnel operate as arms of the state when performing functions which flow from the state.[6] See Manders v. Lee, 338 F.3d 1304, 1310-24 (11th Cir. 2003) (*en banc*). In this case, Plaintiff's allegations relate to actions undertaken by Defendants while performing functions that flow from the state.[7] Consequently, Plaintiff's allegations relate to actions taken by state officials, and thus, Plaintiff's official capacity claims for monetary damages are barred by the Eleventh Amendment. Kentucky v. Graham, 473 U.S. 159, 169 (1985).

---

[6] Although the Eleventh Circuit has not explicitly held that sheriff's department personnel act as arms of the state when performing functions that flow from the state, this logical interpretation flows from the language used by the Eleventh Circuit:

> In contrast to the State's authority and control over sheriffs, Georgia's Constitution grants counties no legislative power or authority over sheriffs and expressly prevents counties from controlling or affecting the sheriff's office *or the personnel thereof*. Ga. Const. art. IX, § 2, ¶ 1(c)(1).
>
> . . .
>
> Georgia's Constitution further prevents counties from taking any action affecting any elective county office *or the personnel thereof*. Ga. Const. art. IX, § 2, ¶ 1(c)(1).

Manders v. Lee, 338 F.3d 1304, 1310-24 (11th Cir. 2003) (*en banc*) (emphasis added).

[7] "[T]he State alone has delegated to sheriffs specific duties in three main areas: (a) law enforcement; (b) state courts; and (c) corrections." Manders, 338 F.3d at 1312.

H.  **Emotional and Psychological Damages**

Plaintiff seeks $500,000 in compensatory damages for emotional and psychological damages, mental anguish, personal humiliation, injury to Plaintiff's quality of life, and loss of property and time. (Doc. no. 1, p. 21). When a lawsuit involves (1) a federal civil action (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody, § 1997e(e) requires a showing of more than *de minimis* physical injury in order for the plaintiff to proceed. Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002). In this case, Plaintiff does not contend that he suffered any physical injury resulting from Defendants' alleged actions. Consequently, Plaintiff has failed to allege facts sufficient to satisfy the mandates established by § 1997e(e). Therefore, Plaintiff's request for $500,000 in compensatory damages for emotional and psychological damages, mental anguish, and personal humiliation are barred by 42 U.S.C. § 1997e(e).

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's claims pertaining to alleged violations of the LCJ grievance procedures in the Handbook, access to the courts and an attorney, pre-trial due process rights, prosecution of an alleged crime, conditions of confinement, as well as official capacity claims and claims

for emotional and psychological damages, be **DISMISSED**, and that Defendants Lawson, Hancock, Remsen, Burgess, and Taylor be **DISMISSED** from this case.[8]

SO REPORTED and RECOMMENDED on this 31st day of August, 2007, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[8]In a simultaneously filed Order, the Court has directed that service of process be effected on Defendants Pratt and Cullars based on Plaintiff's equal protection claim, as it relates to the alleged racial segregation of inmates in the LCJ.